**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| JENNA CAREW,<br><br>　　　　Plaintiff,<br><br>v.<br><br>MASSACHUSETTS PORT<br>AUTHORITY,<br><br>　　　　Defendant. | CIVIL ACTION NO. |

**<u>NOTICE OF REMOVAL</u>**

Pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, Defendant Massachusetts Port Authority ("Massport" or "Defendant") hereby gives notice of the removal of this action from the Commonwealth of Massachusetts, Suffolk County, Massachusetts to the United States District Court for the District of Massachusetts, Boston Division. Defendant provides this "short and plain statement of the grounds for removal" pursuant to 28 U.S.C. § 1446(a). This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1441(c).

## I.     RELEVANT PROCEDURAL BACKGROUND

1.     <u>Pleading and Procedure</u>: On March 16, 2021, Plaintiff Jenna Carew ("Carew") filed a Complaint and Demand for Jury Trial against Massport in the Suffolk Division of the Superior Court Department of the Commonwealth of Massachusetts ("Suffolk Superior Court"), Civil Action 2184-CV-00637 (the "State Court Action"). A true and accurate copy of the Complaint is attached hereto as <u>Exhibit A.</u> Massport was served with the summons and complaint on April 23, 2021. A true and accurate copy of the summons served on Defendant is attached hereto as <u>Exhibit B</u>. The foregoing consists of all process, pleadings, and orders served on Defendant to date.

## II.  DEFENDANT HAS MET ALL OF THE STATUTORY PREREQUISITES FOR REMOVAL.

2.  <u>Venue</u>: Venue is appropriate in this Court under 28 U.S.C. § 1441(a) as this Court embraces the Suffolk Superior Court where the complaint in the State Court Action was filed.

3.  <u>Copies of Process/Pleadings:</u> Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings and orders served upon Defendant accompanies this Notice of Removal as <u>Exhibits A and B.</u>

4.  <u>Timeliness</u>: Pursuant to 28 U.S.C. § 1446(b)(1) and (2), this Notice of Removal is timely because it is being filed within thirty (30) days of the date that Defendant was served with a copy of the pleading setting forth claims against Defendant in the State Court Action, *i.e.*, within 30 days of April 23, 2021.

5.  <u>Notice to State Court</u>: Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being filed with the Suffolk Superior Court and being served on all parties to this lawsuit on the date of this filing.

6.  <u>Attested Copies</u>: Pursuant to Local Rule 81.1(a), within twenty-eight (28) days after the filing of this Notice of Removal, Defendant will file attested copies of all records and proceedings, as well as all docket entries in the State Court Action.

7.  <u>Reservation of Rights</u>: By filing this Notice of Removal, Defendant does not waive any objections or other defenses that are or may be available to them.

## III.  THE COURT HAS SUBJECT MATTER JURISDICTION OVER THIS ACTION.

8.  Pursuant to 28 U.S.C. § 1441(a), this Court has jurisdiction over "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."

9.      This action is one over which this Court has original jurisdiction under 28 U.S.C. §

1331 and is one which may be removed pursuant to 28 U.S.C. § 1441.

10.     Federal question jurisdiction exists under Section 1331 where the Complaint asserts

a claim "arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.

11.     The presence or absence of federal-question jurisdiction that will support removal

is governed by the "well- pleaded complaint rule", which provides that federal jurisdiction exists

only "when a federal question is presented on the face of the properly pleaded complaint."

*Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987); *see also Ten Taxpayer Citizens Grp. v. Cape

Wind Associates, LLC*, 373 F.3d 183, 193 (1st Cir. 2004) (holding case was properly removed

because a federal question appeared on the face of the well-pleaded complaint).

12.     Here, on the face of the Complaint, Plaintiff explicitly alleges a violation of and

seeks remedies pursuant to a federal law, Title VII of the Civil Rights Act of 1964.

## IV.    CONCLUSION

WHEREFORE, Defendant respectfully give notice that this action is hereby removed from

the Commonwealth of Massachusetts Superior Court, Department of the Trial Court, Suffolk

County, Massachusetts, to the United States District Court for the District of Massachusetts.

Dated:  May 24, 2021

Respectfully Submitted,

MASSACHUSETTS PORT AUTHORITY,

By their attorneys,


/s/ Terence P. McCourt
Terence P. McCourt (BBO # 555784)
Kelly M. Pesce (BBO# 689887)
Courtney Foley (BBO #707181)
GREENBERG TRAURIG, LLP
One International Place
Boston, MA 02110
Telephone: (617) 310-6246
Facsimile: (617) 310-6001
mccourtt@gtlaw.com
pescek@gtlaw.com
foleyc@gtlaw.com


## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that paper copies will be sent all those non-registered participants on May 24, 2021.

/s/ Terence P. McCourt

# **<u>EXHIBIT A</u>**

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|

| PLAINTIFF(S): | JENNA CAREW | COUNTY |
|---|---|---|
| ADDRESS: | | Suffolk |

| | | DEFENDANT(S): | MASSACHUSETTS PORT AUTHORITY |
|---|---|---|---|

| ATTORNEY: | Lisa Brodeur-McGan | | |
|---|---|---|---|
| ADDRESS: | 1380 Main Street, Suite 202, Springfield, MA  01103 | ADDRESS: | One Harborside Drive, East Boston, MA |

| BBO: | 556755 |
|---|---|

### TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| AB1 | Tortious Actio Involving the Commonwealth | A | [X] YES   [ ] NO |

*If "Other" please describe:

| Is there a claim under G.L. c. 93A? | Is this a class action under Mass. R. Civ. P. 23? |
|---|---|
| [ ] YES   [X] NO | [ ] YES   [X] NO |

### STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

#### TORT CLAIMS
(attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses .................................................... $ _____
2. Total doctor expenses .................................................... $ _____
3. Total chiropractic expenses .................................................... $ _____
4. Total physical therapy expenses .................................................... $ _____
5. Total other expenses (describe below) .................................................... $ _____
Subtotal (A): > $ 10,000,

B. Documented lost wages and compensation to date .................................................... > $ 66,000,
C. Documented property damages to date .................................................... $ _____
D. Reasonably anticipated future medical and hospital expenses .................................................... $ _____
E. Reasonably anticipated lost wages .................................................... > $ 200,000,
F. Other documented items of damages (describe below) .................................................... $ 250,000,
*emotional distress*

G. Briefly describe plaintiff's injury, including the nature and extent of injury:
Lost wages, benefits, emotional distress *Lost wages, emotional distress attorney fees arising out of employment discrim. + retaliation*

TOTAL (A-F): $ 526,000

#### CONTRACT CLAIMS
(attach additional sheets as necessary)

[ ] This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).
Provide a detailed description of claim(s):

TOTAL: $ _____

Signature of Attorney/ Unrepresented Plaintiff: X _____   Date 3/16/2021

RELATED ACTIONS: Please provide the case number, case name, and county of any related actions pending in the Superior Court.

#### CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney of Record: X _____   Date: 3/16/2021

2/25 4:20

COMMONWEALTH OF MASSACHUSETTS
TRIAL COURT OF THE COMMONWEALTH

Suffolk, ss.                                                      Superior Court Department
                                                                  Civil Action No.

---

JENNA CAREW,
                        Plaintiff

v.

MASSACHUSETTS PORT AUTHORITY,
                        Defendant

---

## <u>COMPLAINT AND DEMAND FOR JURY TRIAL</u>

### <u>PARTIES</u>

1)      Plaintiff Jenna Carew (hereinafter "Plaintiff" or "Carew") is a natural person residing in

Norfolk County, Massachusetts.

2)      Defendant Massachusetts Port Authority (hereinafter "Defendant," or "Massport," or "the

agency"), is a statutorily created agency of the Commonwealth with regular place of

business at One Harborside Drive, East Boston, Suffolk County, Massachusetts.

### <u>FACTS</u>

3)      Carew is female and was hired on August 10, 2015 by Massport as an Aviation Officer.

4)      In August 2017 Carew was assigned to Massport Police as an officer.

5)      In April 2018 Patrol Officer Anglea Deliza (male) reported to Carew that there were

rumors she was sleeping with Captain Alex Puopolo (male). In November 2018, Patrol

Officer Peter White (male) reported to Carew that there were rumors she was sleeping

with Captain Puopolo.

6)      When Carew became aware of these statements, she immediately reported them to

Lieutenant Steven McNaught (male) and advised that the reported rumors were untrue

and offensive, and Carew maintains such conduct constitutes sex/gender discrimination and a hostile work environment.

7)    Despite Carew's complaint, the rumors continued.

8)    After Carew made these complaints, she was passed up on overtime on numerous occasions and assigned to less desirable posts.

9)    In September 2019 Carew reported to Sergeant Jeff Doucette (male) her ongoing complaints concerning rumors regarding her and Capt. Puopolo.

10)   On the evening of this report, Sgt. Doucette was in her chain of command and her supervisor. Carew worked a midnight shift and was crying in her cruiser alone. John Barry pulled up to her and relieved her from her post. Carew believes he called Sgt. Doucette to report her state, which prompted a phone call from Sgt. Doucette. Carew reported what she was going through to Doucette and he said he would follow up with McNaught. Doucette told Carew to take her time and to go grab a water, and said Carew had to go to compliance at that point.

11)   After two discussions, Sgt. Doucette told Carew to "go to Compliance" to complain, which she did in December. Compliance is a part of Defendant's Human Resources.

12)   Carew's complaints constitute protected activity within the meaning of state and federal gender discrimination laws.

13)   After Carew's protected activity, Defendant and its agents subjected Carew to different terms and conditions of employment, and otherwise treated her differently than male employees and differently than those who have not engaged in protected activity.

14) This different treatment was substantial and ongoing. Due to the volume of issues and examples that have taken place over time, Carew details here only some of such discriminatory and retaliatory conduct.

15) On or about October 3, 2019, and thereafter, Carew received pictures and video from Officers White, Louis Valdez (male), Matthew Flynn (male), and John MacDonald (male) of Lieutenant Jonathan Lent (male), Lieutenant Frank Cofferan (male), Sergeant Brian McDonough (male), and Sergeant Marty Curley (male) monitoring her on video while they were on shift. This monitoring of her was simply harassment.

16) On October 25, 2019, at approximately 11:35 pm, Carew received texts from Lt. McNaught (upon information and belief under orders from either Captain Sean Kelley (male) or Capt. Joseph Gatto (male)) saying she could not use the restroom until 2:00 am.

17) On November 7, 2019, Carew asked for a winter hat from Captain Richard Sims (male) and the request was denied. Immediately after, Ofr. White (male) requested a winter hat and was given one. Carew eventually received a winter hat but only after making a complaint to McNaught via text message. This event was reported to HR, which allegedly "counseled" Capt. Sims on this conduct.

18) On November 16, 2019, Carew was unfairly and unnecessarily forced to stay at work late by Sgt. Curley. She called her union representative following this order and was allowed to go home.

19) On December 3, 2019, Carew called Lt. McNaught to complain about the rumors and to complain about sex (gender) discrimination.

20) On December 3, 2019, Carew was on patrol at the East Boston YMCA. Ofr. Valdez was dispatched on the other side of a park, further from the area. Lt. Cofferan acknowledged

where Ofr. Valdez was dispatched. However, Lt. Cofferan sent Ofr. Valdez to respond to an incident in the YMCA despite Carew's presence there.

21)   On December 4, 2019, Carew asked to file a grievance regarding the harassment and discrimination for the skipped overtime. Upon hearing of her intent to file, Captain Kevin Murphy (male) left a news article in her mailbox entitled, 'McDonald's C.E.O Fired Over a Relationship That's Becoming Taboo." Carew filed a complaint about this incident.

22)   On or about December 7 – 11, 2019, Capt. Sims and Capt. Kelley came to roll call and "outed" to the Department that Carew had filed a sexual harassment complaint. Carew was advised that on December 11 at roll call someone read an email out loud about these complaints.

23)   For her assignment on December 19, 2019, Carew was given a cruiser known to be malfunctioning, even though there were other available cruisers in perfect working order.

24)   Since Carew's complaints, she would consistently be assigned sub-optimal cruisers when there were better options available.

25)   Also on December 19, 2019, Carew was ignored on roll call. After acknowledging and assigning all other officers, Lt. Cofferan simply glared at her with disgust in front of other officers.

26)   Carew was constantly assigned to fixed posts (where you cannot be relieved until you get face-to-face relief) significantly more than her male colleagues after she made complaints about discriminatory treatment.

27)   On January 14, 2020, Carew filed a complaint with the Massachusetts Commission Against Discrimination alleging discrimination, sexual harassment, and retaliation (Docket No. 20BEM00098)

4

28) Prior to filing but during the time she was complaining about the issues raised in her MCAD complaint, Chief Grady told Carew, using a Bill Belichick phrase, to "ignore the noise," which she believed meant he wanted her to ignore the issues and not make a big deal of them.

29) Carew's first meeting with HR was on December 6, 2019. HR found that she was discriminated against and harassed and issued her a letter stating such on January 8, 2020.

30) On January 15, 2020, Carew had a follow up meeting with HR to discuss a change of shift to avoid Murphy, Cofferan, and Curley because she felt uncomfortable and unsafe around them. In response, Carew's shift was changed from 2-10 pm to 3-11 pm.

31) At that meeting Carew requested, and HR and Chief Grady agreed, to change her shift to 3-11 pm to limit the hostile work environment with Lt. Cofferan and Sgt. Curley.

32) However, the shift change did not stop the retaliatory and discriminatory behavior Carew experienced.

33) Also in this January 15 meeting, Carew asked HR to have Capt. Murphy's office relocated, as he made her feel uncomfortable and unsafe, and in response, they showed her a map of the building and went over possibilities. However, in this meeting after she informed HR that she had filed an MCAD complaint, the discussions of Murphy's office being relocated came to a complete stop and his office was not relocated.

34) In this meeting Carew also told HR that a police report she had prepared on June 10, 2019 in the course of her duties had been drastically changed and was no longer something she recognized to be her own. She has never received any response regarding that complaint. However, after that particular complaint, her access to look up old reports was taken away.

5

35) That evening, January 15, 2020, at the start of her shift, Sgt. Curley again ignored her in roll call. With Officer John MacDonald present, after Sgt. Curley gave out assignments and cruisers, he then said "All set guys." Carew was forced to then have to ask, "Where am I going tonight?" Sgt. Curley looked at Captain Sims and said "She's going to Piers Park."

36) Capt. Sims was in roll call on this day, because at this point Defendant began adding a "witness" to every roll call that I was in.

37) On February 1, 2020, Carew was in roll call with Officer Hoffman when Sgt. Curley gave out assignments for the evening.

38) Carew again was forced to ask where she was going for the midnight shift as she was working a double. Sgt Curley responded in an aggressive tone, "I have to call the chief for YOUR assignments."

39) Carew reported what Sgt. Curley told her to Chief Jessica Szyszka.

40) Chief Szyszka later text-messaged Carew her assignment for the midnight shift, which is completely contrary to protocol and, based on information and belief, had not been done before. Protocol is to get assignments at roll call from the immediate chain of command.

41) On February 14, 2020, Carew worked a detail at Logan Airport. Before that shift, Lt. Lent gave Carew her cruiser keys at 6:00 am but said nothing more to her. An hour later Carew got an email from Chief Szyszka asking her to give her a call.

42) Carew called and Chief Szyszka said "I heard you were late to detail; please make sure you're on time." When Carew asked why a chief was calling her and not Lt. Lent, who she had just seen, Chief Szyszka said Lt. Lent was "hesitant to speak to you."

43) On February 29, 2020, Carew called over the radio that MP10, the vehicle she was assigned for the evening, had a seat that was broken and would not move back and forth, which made it unsafe for her to operate. Sgt Curley responded "received" over the radio. Three hours later, Sgt. Curley had Officer Gomez, who had been available in the general area for the entire three hours, come to Carew's location to attempt to fix the seat. This was unsuccessful and, at that point, three hours into her shift, Curley allowed Carew to get a new cruiser. There had been a better, safer cruiser available for use the entire time.

44) On March 12, 2020, Capt. Murphy was exiting the captain's locker room as Carew was walking towards the women's locker room. Before she entered the locker room, he came to a complete stop in the hallway, leered at her, then spit in a trash barrel while maintaining eye contact. Carew took these actions as a sign of disgust and further retaliation and intimidation for filing her complaint against the Department.

45) On March 17, 2020, Carew was advised by Ofr. Flynn that he found a copy of her MCAD complaint in the printer located at headquarters, which is right outside of the roll call room; the entire Department has access to this printer.

46) On March 18, 2020, Officer McNally informed Carew that her MCAD complaint had been "plastered all over the Department, copies everywhere."

47) On March 21 2020, there was an hour of overtime available on the third platoon between 11pm-12 am. This overtime was not offered to Carew and was actually forced onto her male colleague, Ofr. Flynn, who had more overtime hours in than she did. Sgt Curley informed Ofr. Flynn he was forced for the hour because he (Curley) did not want to be left alone with Carew during the relief. Ofr. Flynn reported this to Carew because, given

7

the respective hours worked, under Department policy the overtime should have been offered to her first.

48)   On April 1, 2020, Carew was again passed over for an available overtime shift. When she received a message about the available shift, per standard operating procedure she texted her response to put in for it.

49)   Carew was not assigned the shift and it ultimately went to an officer with more overtime hours in than she had. Again, based on policy and procedure, she should have been given the overtime shift.

50)   When Carew inquired why she was not given this shift, she was told that her text message was not received due to a "computer error."

51)   Due to the continued gender discrimination issues as well as retaliation for her protected activity in filing her January 2020 MCAD complaint, Carew filed another complaint at the MCAD detailing same (20BEM00736).

52)   In May 2020, due to the hostile work environment and the ongoing unfair and unlawful treatment she was being subjected to, Carew had a mental health breakdown and was unable to work for nearly two weeks.

53)   Carew was diagnosed as suffering from Post Traumatic Stress Disorder.

54)   On April 28, 2020, Carew filed a worker's compensation claim related to her mental health breakdown, of which Defendant received notice.

55)   On or about September 18, 2020, Carew requested an accommodation to work dispatch due to issues associated with her pregnancy; she continued to work her full duties until it was approved days later.

56)   On September 19, 2020, a day after advising HR and Chief Szyszka she was pregnant, Sgt. Curley issued Carew a cruiser without any working heat. The lack of heat issue had been reported the evening before.

57)   When Carew radioed in that the cruiser had no working heat, Sgt. Curley simply responded "received," and did not take the vehicle out of service or issue a new vehicle, despite the fact that the temperature was in the low 50's that night.

58)   On October 30, 2020, Carew received a phone call from Emily Claussen, Director of Leave/Accommodations.

59)   Via phone call in the early morning, Claussen advised Carew that her unit was going to be conducting a schedule bid in the coming days, but due to Carew's current accommodation (pregnancy) she was not allowed to bid for a new schedule.

60)   Carew believed she had sufficient seniority to bid for a better schedule that would have permitted her to attend doctor appointments and do other things necessary for her medical condition (high risk pregnancy).

61)   Claussen advised Carew to request an accommodation instead of bidding and it would either be approved or denied by command staff. Claussen further told Carew that she would be left on her current schedule until her delivery due to her accommodation status.

62)   At that time, Carew told Claussen that her current scheduled was not working for her with regard to doctor visits, but Claussen responded that Carew's only option was to request an accommodation in terms of new days/hours, but that the fact remained that Carew could not bid while on a pregnancy accommodation.

63)   During this conversation, Carew told Claussen she would like to bid as was her right as a union member.

64)   Claussen again advised that due to her pregnancy, she was not allowed to bid.

65)   Carew was forced once again to contact her attorney to obtain her rights to bid.

66)   At the same time, under Claussen's direction Carew requested an accommodation of a revised schedule to Chief Grady and Claussen, requesting Thursday and possibly Friday 2-10 pm off.

67)   Carew advised Claussen that she needed this time off for doctor visits. Carew also emailed this to Claussen. Thereafter, Carew was advised that the matter would be discussed with Chief Grady.

68)   Carew also obtained a doctor's note supporting her request. At that point Carew was granted Thursdays and Fridays off.

69)   From September 2020 to present, when Sgt. Curley and Lt. Cofferan are working on Carew's shift they modify the normal duties that a person in that role performs, such as purging trucks and other tasks, and, importantly, do not allow her to take incoming work phone calls that come into police dispatch. Instead, they have the calls redirected to their location at Conley Terminal. This substantially modifies the terms and conditions of her job of dispatching. This is a term or condition of employment that is different for her than others.

70)   This modification to her duties makes her job more challenging and not the same as others who perform this job; further, it hampers her ability to do the job of dispatching as she is not permitted to handle the incoming calls.

71)   By way of comparator, the supervisors allowed Carew's colleague, Whitney Long, who was also pregnant during the same time frame, to take phone calls. Officer Long was also given the task of purging trucks out of the computer system as well as dispatch.

72)   Sgt. Slyne was the only supervisor who allowed Carew to do all functions of a police dispatcher, including accepting incoming phone calls.

73)   On November 20, 2020, Massport was found responsible in Carew's workers' compensation case relating to PTSD and ordered to pay her temporary total incapacity compensation from May 1, 2020 through May 12, 2020, as well as for her ongoing medical treatments.

74)   Thereafter, Carew's symptoms of PTSD, stress, and anxiety have not improved, but she continues to work due to economic need.

75)   In February 2021 alone, Carew has been subjected to at least two radio "well-being" checks when using the restroom. This is not only discrimination but retaliation designed to humiliate her. This is not a practice others are subjected to.

76)   As further examples of ongoing gender discrimination and retaliation, Carew was advised she could not bid in the upcoming bid process because she was working with an accommodation due to her pregnancy related health issues. She was advised that when she returns from pregnancy leave she will be placed on a shift that she did not bid on. This evidence of ongoing retaliation or in the alternative yet again another example of gender discrimination that is ongoing.

**COUNT I**
*M.G.L. Chapter 151B Gender Discrimination*

77)   Paragraphs 1 through 76, *supra*, are hereby incorporated herein by reference and re-alleged as if set forth fully herein.

78)   Plaintiff is a woman, a class given protections under Chapter 151B of Massachusetts General Laws.

11

79) Defendant, by and through its agents and/or employees, treated Plaintiff in a discriminatory fashion, including subjecting her to gender discrimination and/or sexual harassment, not giving her similar opportunities or amenities as men, and failing to investigate same when reported.

80) As a result of Defendant's discriminatory treatment, Plaintiff suffered economic and other damages, including damage to her reputation, emotional distress, and lost wages, and incurred attorney fees.

## COUNT II
*Unlawful Retaliation in Violation of M.G.L. Chapter 151B*

81) Paragraphs 1 through 80, *supra,* are hereby incorporated herein by reference and re-alleged as if set forth fully herein.

82) Defendant, by and through the conduct of its agents and/or employees, retaliated against Plaintiff for filing complaints of gender discrimination and sexual harassment.

83) As a result of Defendant's illegal conduct, Plaintiff suffered economic and other damages, including damage to her reputation, emotional distress, and lost wages, and incurred attorney fees.

## COUNT III
*Title VII Gender Discrimination*

84) Paragraphs 1 through 83, *supra*, are hereby incorporated herein by reference and re-alleged as if set forth fully herein.

85) Plaintiff is a woman, a class given protections under Title VII of the Civil Rights Act of 1964.

86) Defendant, by and through its agents and/or employees, treated Plaintiff in a discriminatory fashion, including subjecting her to gender discrimination and sexual

harassment, not giving her similar opportunities or amenities as men, and failing to investigate same when reported.

87) As a result of Defendant's discriminatory treatment, Plaintiff suffered economic and other damages, including damage to her reputation, emotional distress, and lost wages, and incurred attorney fees.

## COUNT IV
*Unlawful Retaliation in Violation of Title VII*

88) Paragraphs 1 through 87, *supra*, are hereby incorporated herein by reference and re-alleged as if set forth fully herein.

89) Defendant, by and through the conduct of its agents and/or employees, retaliated against Plaintiff for filing complaints of gender discrimination and sexual harassment.

90) As a result of Defendant's illegal conduct, Plaintiff suffered economic and other damages, including damage to her reputation, emotional distress, and lost wages, and incurred attorney fees.

## COUNT V
*M.G.L. Chapter 152 – retaliation*

91) Paragraphs 1 through 90, *supra*, are hereby incorporated herein by reference and re-alleged as if set forth fully herein.

92) Plaintiff pleads this count in the alternative to the above retaliation complaint.

93) Plaintiff suffered a workplace injury that required treatment and for which she missed work.

94) Plaintiff applied for workers compensation benefits under Massachusetts General Laws Chapter 152.

95)    After requesting those benefits, Defendant, by and through its agents and/or employees, retaliated against Plaintiff by engaging in behavior that negatively affected the conditions of her employment.

96)    As a result of those retaliatory acts, Plaintiff suffered significant economic and other damages.

**Wherefore,** Plaintiff Jenna Carew requests this court enter judgment against Defendant Massachusetts Port Authority and award her damages, to include lost wages, back pay, front pay, benefits, emotional distress, exemplary damages, punitive damages, and attorney fees.

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL TRIABLE ISSUES.

PLAINTIFF, JENNA CAREW

Date: 3-18-2021

Lisa Brodeur-McGan (BBO# 556755)
Brodeur-McGan, P.C.
1380 Main Street, Suite 202
Springfield, MA 01103
(413) 735-1775; Fax: (413) 735-1772
lbm@brodeurmcgan.com

14

# EXHIBIT B

# Commonwealth of Massachusetts

SUFFOLK, SS.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO.  2184CV00637

Jenna Carew , PLAINTIFF(S),

v.

Massachusetts
Port Authority , DEFENDANT(S)

**SUMMONS**

c/o Lewis Evangelidis, Chairman
Mass Port Auth.
One Harborside Dr. Ste 200s
East Boston MA 02128

THIS SUMMONS IS DIRECTED TO Massachusetts Port Auth. (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the Suffolk Sup. Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.** To respond to this lawsuit, you must file a written response with the court and mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

   a. Filing your signed original response with the Clerk's Office for Civil Business, Suffolk Superior Court,
   3 Pemberton Sq. Boston MA 02108 (address), by mail or in person, **AND**

   b. Delivering or mailing a copy of your response to the Plaintiff's Attorney/Plaintiff at the following address: Lisa Brodeur-McGan, 1380 Main St., Ste 202, Springfield MA 01103

3. **What to include in your response.** An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a "**Motion to Dismiss,**" if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov/courts/case-legal-res/rules of court.

# USPS Tracking®

FAQs >

## Track Another Package +

**Tracking Number:** 70112000000036068646

Remove ✕

*Your item has been delivered and is available at a PO Box at 8:36 am on April 20, 2021 in CHELSEA, MA 02150.*

## ✓ Delivered, PO Box

April 20, 2021 at 8:36 am
CHELSEA, MA 02150

Get Updates ⌄

---

Text & Email Updates ⌄

---

Tracking History ⌄

---

Product Information ⌄

---

See Less ⌃

## Can't find what you're looking for?

Go to our FAQs section to find answers to your tracking questions.

**SENDER: COMPLETE THIS SECTION**

- ■ Complete items 1, 2, and 3.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Lewis Evangelidis, Chairm
Mass Port Anth
One Harborside Dr, Ste 200s
East Boston MA - 02128

9590 9402 5855 0038 1025 73

2. Article Number (Transfer from service label)

7011 2000 0000 3606

PS Form 3811, July 2015 PSN 7530-

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____ □ Agent
□ Addressee

B. Received by (Printed Name)       C. Date of Delivery

MAIN STREET STATION
APR 23 2021
SPRINGFIELD MA 01101

D. Is delivery address different from item 1?   □ Yes
If YES, enter delivery address below:   □ No

3. Service Type
□ Adult Signature
□ Adult Signature Restricted Delivery
☑ Certified Mail®
□ Certified Mail Restricted Delivery
□ Collect on Delivery
□ Collect on Delivery Restricted Delivery

□ Priority Mail Express®
□ Registered Mail™
□ Registered Mail Restricted Delivery
□ Return Receipt for Merchandise
□ Signature Confirmation™
□ Signature Confirmation

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | | |
|---|---|---|
| Postage | $ 1.60 | |
| Certified Fee | 3.60 | Postmark Here |
| Return Receipt Fee (Endorsement Required) | 2.85 | |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ 8.05 | |

Sent To Mass Port Anth / Lewis Evangelidis
Street, Apt. No.; or PO Box No. One Harborside Dr. Ste 200 S
City, State, ZIP+4 East Boston MA 02128

PS Form 3800, August 2006          See Reverse for Instructions

7011 2000 0000 3606 8478